**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DARRYL KINNEY SR.** | **:** | **Case No.:** |
| **29 Fairwood Ct.** | | **Judge:** |
| **Miamisburg, Ohio 45342** | **:** | |
| | | |
| **Plaintiff,** | **:** | |
| | | |
| **v.** | **:** | |
| | | |
| **CITY OF MIAMISBURG** | **:** | **COMPLAINT FOR VIOLATIONS OF** |
| **10 North First St.** | | **42 U.S.C. § 1983, WRONGFUL** |
| **Miamisburg, Ohio 45342** | **:** | **ARREST, FALSE IMPRISONMENT,** |
| | | **MALICIOUS PROSECUTION,** |
| **and** | **:** | **EXCESIVE FORCE, ASSAULT,** |
| | | **MUNICIPAL LIABILITY,** |
| **KATHERINE MERKEL** | **:** | **DEFAMATION, NEGLIGENT** |
| **20 Fairwood Drive** | | **HIRING, TRAINING, AND** |
| **Miamisburg, Ohio 45342** | **:** | **SUPERVISION, AND TITLE II** |
| | | **OF THE ADA** |
| **Defendants.** | **:** | |
| | | **JURY TRIAL DEMANDED HEREIN** |

---

## COMPLAINT

Now comes Plaintiff, Darryl Kinney Sr. ("Plaintiff"), by and through the undersigned counsel, and

for his Complaint states the following:

### INTRODUCTION

1. Plaintiff brings this civil action for damages, injunctive relief, and declaratory relief against

   Defendants, the City of Miamisburg ("Defendant City" or "Defendant Miamisburg") and

   Katherine Merkel ("Defendant Merkel"), to seek redress for violations of 42 U.S.C. § 1983,

   42 U.S.C. § 12132, and Ohio tort law.

1

2. This is an action to vindicate the fundamental rights of Plaintiff, Darryl Kinney Sr., a 60-year-old Black man and 18-year resident of the PipeStone Golf Club community in Miamisburg, Ohio (the "Neighborhood"), after he was violently and unlawfully seized, arrested, and jailed while taking an evening walk in his own neighborhood; a neighborhood in which he has lived, raised his children, and paid taxes since 2007.

3. On the night of July 12, 2025, Plaintiff Kinney had just returned home with his terminally ill son after a trip to the Montgomery County Fair.

4. Following his recent back surgery, Mr. Kinney's physician recommended that he take walks around his neighborhood for exercise.

5. On the night of July 12, 2025, Mr. Kinney planned to take a short walk around his block before returning to the driveway to watch the stars with his son. However, Mr. Kinney never made it back home that night.

6. Defendant Merkel, a young, white resident of the Neighborhood, drove past Plaintiff Kinney in her SUV, observed a large Black man walking on the sidewalk on Fairwood Drive, and called the Miamisburg Police Department.

7. Defendant Merkel falsely reported that Plaintiff was hitting mailboxes on Fairwood Drive.

8. However, not a single mailbox was damaged, nor was Plaintiff even walking near the mailboxes on the street, instead he was walking down the sidewalk.

9. Responding Miamisburg police officers never even investigated whether any damage had occurred.

10. Instead, officers of the Miamisburg Police Department arrived on the scene, illuminated Plaintiff with their headlights, and immediately escalated to extreme force.

11. Within seconds of pulling up on Mr. Kinney, the responding Miamisburg police officers began screaming obscenities, drawing and pointing their tasers directly at Plaintiff, ordering him to drop his water bottle as if it were a dangerous weapon, and ordering Plaintiff to the ground despite his protestations that he was an older man who had just had back surgery, lived steps away, and had done absolutely nothing wrong.

12. Defendant Miamisburg's officers fabricated pretextual charges, wrote the complaining witness's police statement themselves on body camera footage, dumped Plaintiff's water bottle into the grass to eliminate evidence that it contained only water, laughed and joked about Plaintiff's physical size, admitted that they skipped talking to him and went straight to drawing weapons because of how big he was, and ultimately dragged him to jail in handcuffs, which aggravated his recent spinal surgery, resulting in additional medical procedures.

13. Plaintiff does not drink alcohol, he has no prior criminal record, and he was never given a field sobriety test, breath test, or blood test of any kind.

14. Plaintiff's property was logged at the jail as "one water bottle, containing water."

15. The criminal charges filed by Defendant Miamisburg against Plaintiff, disorderly conduct and obstruction, were dismissed with prejudice by the Miamisburg Municipal Court after a review of the clearly discriminatory circumstances behind Plaintiff's arrest.

16. While he was being arrested and humiliated in front of his home, Defendant Merkel filmed the encounter on her Snapchat story, broadcasting it to neighbors and followers while joking about Mr. Kinney's arrest.

17. Defendant Merkel later even laughed in the face of Plaintiff's wife, asking her: "that was your husband? hahaha."

18. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Kinney's tow truck business was significantly impacted which forced him to close the business due to the loss of lucrative roadside assistance contracts with AAA and other national companies.

19. Additionally, as a direct and proximate result of Defendants' unlawful conduct, Plaintiff lost trucks associated with his business, defaulted on business loans, and saw his credit destroyed as a result. Furthermore, Defendants' unlawful conduct and the light which it put Mr. Kinney under directly and proximately led to Mr. Kinney losing a number of security contracts with prominent musicians and celebrities.

20. As a direct and proximate result of Defendants' unlawful conduct, Mr. Kinney now faces the prospect of having to sell the home where he has lived for nearly two decades, and his back and shoulder injuries have worsened which forced him to undergo additional surgical procedures.

21. As a further direct and proximate result of Defendant's unlawful conduct, Mr. Kinney has suffered profound emotional distress, humiliation, and reputational harm.

22. Significantly, Mr. Kinney's terminally ill son, was waiting in the driveway that night to watch the stars with his father, but was instead subjected to watching his father be

4

threatened with weapons and arrested by Miamisburg police officers all for the "crime" of walking in his own neighborhood while Black.

23. The actions of Defendants are consistent with Miamisburg's documented history as a community that has long excluded, targeted, and marginalized Black residents and visitors, and reflects the systemic failure of Defendant City to properly train, supervise, and hold accountable its police officers.

24. In acting or omitting to act as alleged herein, the Miamisburg police officers involved in the July 12, 2025, arrest of Mr. Kinney were acting within the course and scope of their actual or apparent authority with Defendant Miamisburg, or the alleged acts or omissions of each officer as agent of Miamisburg was subsequently ratified and adopted by Defendant Miamisburg as principal.

25. Plaintiff now brings this Complaint seeking monetary, injunctive, declaratory, and any other relief that he is entitled to in this action.

## JURISDICTION AND VENUE

26. Jurisdiction is appropriate in that this civil action is brought under 42 U.S.C. § 1983, which provides a cause of action for the deprivation of rights secured by the Constitution and laws of the United States under color of state law.

27. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the Complaint raises federal questions under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 12132.

28. Additionally, this Court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367, including Plaintiff's Ohio tort law claims.

29. Defendant City of Miamisburg is a municipal corporation located in Montgomery County, Ohio, and the tortious and constitutional violations alleged herein occurred within its jurisdiction.

30. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the Defendants reside in this judicial district and the events and omissions giving rise to the claims occurred in this district.

31. Standing is appropriate as Plaintiff has been directly injured by the unconstitutional policies, practices, and actions of the Defendants, and a favorable ruling will redress those injuries.

## **PARTIES**

32. Plaintiff, Darryl Kinney Sr. ("Plaintiff" or "Mr. Kinney"), is a Black, African American male, age 60, and a resident of Miamisburg, Ohio. He has lived at 29 Fairwood Ct., Miamisburg, Ohio 45342, since 2007. He is a father, a personal bodyguard to prominent entertainers and musicians, and the former owner of a tow truck company.

33. Defendant, City of Miamisburg ("Defendant City" or "Defendant Miamisburg"), is a municipal corporation organized under the laws of the State of Ohio with its principal place of business at 10 N. First St., Miamisburg, Ohio 45342. Defendant City operates, controls, and is responsible for the Miamisburg Police Department and its officers, employees, agents, policies, customs, and practices. Defendant City is a "person" subject to suit under 42 U.S.C. § 1983, a "public entity" pursuant to 42 U.S.C. § 12132, and is subject to liability

under Ohio Rev. Code § 2744.02. Individual Miamisburg Police Department officers involved in this incident are identified on information and belief as being white officers, some of whom Plaintiff recognized from his children's school athletic events, and whose identities will be confirmed through discovery. Plaintiff expressly reserves the right to amend this Complaint to add individual officer defendants upon identification.

34. Defendant, Katherine Merkel ("Defendant Merkel"), is a white female, born August 18, 2006, and at the time of the incident was approximately 18 years old. Her address is believed to be 20 Fairwood Ct., Miamisburg, Ohio 45342, a property owned by her father, Rodger Merkel. Defendant Merkel is the individual who, on the night in question, followed Plaintiff in her SUV, called the Miamisburg Police Department on Plaintiff, made a false report against Plaintiff to the Miamisburg Police Department, filmed Plaintiff's arrest for her Snapchat or social media profiles, and subsequently mocked his arrest in front of his wife and neighbors.

35. In acting or omitting to act as alleged herein, each Defendant acted through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

36. Defendants are directly and vicariously liable for the unlawful and discriminatory practices of their employees, officers, and/or agents.

## FACTS

37. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 36 as if fully restated herein.

A. **Plaintiff Darryl Kinney Sr. and His Community**

7

38. Mr. Kinney is a 60-year-old Black man who has resided in the Neighborhood in Miamisburg, Ohio since purchasing his home in 2007 and moving in in 2008.

39. Mr. Kinney has raised his children in the Neighborhood and is deeply embedded in his community.

40. Plaintiff has a security background with prominent clients in the entertainment industry and also owned and operated a tow truck company with lucrative roadside assistance contracts, including with AAA.

41. Plaintiff is an 18-year homeowner and community fixture in the Neighborhood in Miamisburg and at the local schools where his children were educated.

42. Mr. Kinney does not consume alcohol.

43. Mr. Kinney walks and bicycles regularly through his neighborhood as part of his fitness routine, a routine his orthopedic surgeon specifically encouraged as an alternative to working out in the gym following his back surgery.

44. Plaintiff's spine had been surgically repaired approximately one and a half weeks before the events described herein.

45. Plaintiff has hardware and wires implanted into his back and neck from prior procedures, and had previous, ongoing shoulder issues as well.

46. Prior to the incident with the Miamisburg police department on July 12, 2025, Plaintiff's recovery had been progressing well.

47. Miamisburg is a community that is overwhelmingly white in its demographics and which has historically functioned as a "sun-down town". [1]

48. Plaintiff has on multiple prior occasions been followed to his own home and racially profiled while residing in the Neighborhood.

49. Plaintiff has witnessed neighbors call the police on Black children walking through the area, while identical conduct by white children went unreported.

50. The Miamisburg Police Department has a history of using lethal force against Black men in police interactions.

51. Several months before this incident, police from Miami Township Police Department, a separate agency from the Miamisburg Police Department that operates within the same geographic area, shot and killed a young Black man named Jayden Stephenson near Plaintiff's neighborhood.

52. Plaintiff is aware of this history, and it informed his fear on the night of July 12, 2025.

B.  **The Night of July 12, 2025**

53. On the night of Saturday, July 12, 2025, during the weekend of the Montgomery County Fair, Plaintiff Kinney took his terminally ill son to enjoy a night at the fair.

54. Plaintiff's son had suffered a seizure earlier that day.

---

[1] A "sun-down town" is defined as any organized jurisdiction (town, suburb, county, city, etc.) that intentionally maintained itself as "all-white" by excluding Black Americans through force, law, or custom. Miamisburg, Ohio is a former sundown town, listed on the Sun Down Town database from Tougaloo College organized by sociology professor Dr. James W. Loewen https://justice.tougaloo.edu/sundowntown/miamisburg-oh/ . Up until at least the late 1960s (if not into the 1970s or later), Miamisburg featured a crude-hand painted sign at the town limits which warned that Black people were not welcome within the city of Miamisburg after sun down. While no formal sun-down signs exist today, the population of Miamisburg remains around 87% white as a result of this history.

55. Plaintiff and his son returned home to 29 Fairwood Ct. at approximately 10:25 to 10:30 p.m. that night.

56. Plaintiff decided to take a short walk around his block while Plaintiff's son, who was too tired to participate in the walk, remained in the driveway of their home.

57. The two had planned to watch the stars together after Plaintiff returned from his walk for what was supposed to be a quiet and relaxing moment between a father and his severely ill son.

58. Consistent with his post-surgical exercise routine, and following his physician's direction not to return immediately to strenuous gym activity, Plaintiff set out for a short walk around the block.

59. During this walk, Plaintiff walked along the sidewalk, as he always does during his walks, and not in the street.

60. The mailboxes on Plaintiff's street are directly bordering the street and are not accessible from the sidewalk.

61. Plaintiff spoke on his phone with his friend, Michael Buchanan, while he walked along the sidewalk in his neighborhood.

62. Plaintiff's route took him near the Pipestone and Benner Road area, streets he had walked hundreds of times over his 18 years living in the Neighborhood.

63. While walking along his sidewalk, Plaintiff noticed an SUV drive by and slow down, as if it was watching him.

64. Given recent car break-ins in the neighborhood, Plaintiff was alert as he observed the SUV.

65. Plaintiff noticed the SUV drive by a second time and then park near a neighbor's house as he continued to walk.

## C.  **Defendant Merkel's False Police Report**

66. The driver of the SUV was Defendant Katherine Merkel, a young white neighbor who lives with her father at 20 Fairwood Drive near Plaintiff.

67. After observing Plaintiff walking in the neighborhood, Defendant Merkel called the Miamisburg Police Department's dispatch.

68. Defendant Merkel reported to police that Plaintiff was hitting mailboxes, constituting possible criminal damaging.

69.  This statement was entirely false.

70. Plaintiff was walking on the sidewalk, far away from any mailboxes, while talking on the phone with his friend and holding his water bottle.

71. Plaintiff was not touching any mailboxes, nor was there any damage to any mailbox in the area. However, not a single officer who responded to the scene on the night of July 12, 2025, even bothered to investigate whether any mailbox damage had occurred.

72. Defendant Merkel had no reasonable basis to believe that Plaintiff was engaging in any criminal activity.

73. The only distinguishing characteristic Defendant Merkel observed was that he was a Black man walking on the sidewalk in her neighborhood.

74. Upon information and belief, which Defendant Miamisburg told to the NAACP, Miamisburg's dispatch received Defendant Merkel's report as involving a white male.

11

75. However, when officers arrived and observed that the individual was in fact a Black man, they escalated immediately and dramatically, clearly indicating that their response was driven by race.

76. Defendant Merkel then positioned herself to observe and film the police encounter that she had initiated.

77. She broadcast this footage on her Snapchat profile, mocking and celebrating Plaintiff's arrest for the entertainment of her social media followers.

### D. The Miamisburg Police Department's Unlawful Seizure and Arrest

78. Officers of the Miamisburg Police Department arrived on the scene and trained their headlights directly on Plaintiff while he was walking on the sidewalk.

79. Officers immediately began screaming profanity laced commands at Plaintiff, including orders to get on the ground and demanding to know what he was doing in his own neighborhood.

80. These statements are captured on Miamisburg Police Department body camera footage from the incident.

81. Plaintiff, confused and frightened, continued walking and calmly asked the officers what the problem was.

82. Plaintiff then attempted to explain that he lived on this very street, that he was a longtime resident, and that he was an older man who had recently had back surgery and was simply walking for therapeutic exercise.

12

83. The officers gave no regard to Plaintiff's explanation, instead drawing and pointing their tasers at Plaintiff and demanding that he drop what he was holding, a water bottle, as if it was some type of dangerous weapon.

84. Rather than conducting any reasonable inquiry by asking for identification, checking whether he lived nearby, or investigating the alleged mailbox complaint, the officers immediately moved to extreme force.

85. On body camera footage, one of the responding officers is heard stating words to the effect that Plaintiff was a large man who would have "kicked his ass," and that because of Plaintiff's physical size, the officer went straight to drawing his taser rather than attempting any kind of verbal engagement.

86. This statement reveals the officers' decision to bypass de-escalation and communication entirely based on Plaintiff's appearance.

87. Multiple officers simultaneously drew their tasers and pointed them at Plaintiff while yelling their demands at him.

88. Plaintiff, who believed at the time that the tasers were guns, feared for his life.

89. Plaintiff was aware that Miamisburg police had shot and killed a young Black man in the vicinity of the Neighborhood several months earlier.

90. Plaintiff feared he would be killed in the street in front of his terminally ill son, who was still waiting for him in the driveway down the street.

91. Plaintiff, in fear and compliance, threw his water bottle to the ground when officers demanded he drop whatever was in his hands.

13

92. At least six officers had responded to the scene.

93. Officers ordered Plaintiff to the ground and handcuffed him behind his back.

94. Plaintiff told officers that he had recently undergone back surgery and could not put his hands fully behind his back.

95. Defendant Miamisburg's officers disregarded this entirely and handcuffed Mr. Kinney in a manner that caused immediate and severe pain, aggravating his spinal injuries and causing nerve damage.

96. Plaintiff, who is six feet four inches tall, was then forced into the back of a small police cruiser while handcuffed, causing additional physical distress and injury to his back and shoulders.

97. Mr. Kinney recognized at least one of the responding officers from his children's school athletic events.

98. Mr. Kinney recognized other officers as officers he had encountered previously in the neighborhood.

99. All of the responding officers were white.

100. On body camera footage, one of the officers is heard falsely and maliciously claiming that Plaintiff had charged toward him, purportedly justifying the immediate deployment of tasers.

101. This claim is directly contradicted by the body camera footage itself, which does not show any such movement by Plaintiff.

102. Upon information and belief, one officer on the scene admitted to having a prior interaction with Plaintiff, framing it in body camera statements as if it were criminal in nature, when in fact Plaintiff had previously called the police for assistance himself.

103. Upon information and belief, this same officer had, in a prior encounter with Plaintiff, asked him racially charged questions including words to the effect of "how long have y'all been out here," "how do you afford to live out here," and "you don't sell drugs do you."

### E. Fabrication of Evidence and Pretextual Charges

104. Officers on scene attempted to justify the arrest by claiming that Plaintiff's water bottle smelled of alcohol; however, Plaintiff does not consume alcohol and that allegation was completely false.

105. On body camera footage, Defendant Miamisburg's officers can be heard debating whether the bottle smelled of alcohol.

106. The first officer who examined it did not detect alcohol, a second officer claimed it smelled of alcohol, while third officer declined to smell it stating that he didn't want to put his nose up to the bottle, despite the fact that the strong smell of alcohol would not even necessitate one putting their nose close up to a bottle to detect the smell of alcohol.

107. One officer on the body camera footage is shown physically pouring the contents of the water bottle onto the grass, destroying any evidence of what it contained.

108. The water bottle was never tested for alcohol or processed into evidence.

109.    Despite claiming the bottle smelled of alcohol, officers ultimately did not charge Plaintiff with any alcohol-related offense, because Plaintiff was plainly sober.

110.    The jail's own intake property log, recorded upon Plaintiff's booking, listed his confiscated property as "one water bottle, containing water."

111.    Having abandoned any intoxication theory, officers on body camera footage are heard discussing and deliberating among themselves what charges to bring against Plaintiff.

112.    They eventually settle on disorderly conduct and obstruction as the crimes to charge Plaintiff with.

113.    The obstruction charge was added specifically because disorderly conduct is a minor misdemeanor, not a jailable offense, and the officers needed the obstruction charge to justify Plaintiff being arrested and taken to jail.

114.    Officers charged Plaintiff with obstruction based entirely on a fabricated and false characterization of his conduct as non-compliant, when body camera footage shows that Plaintiff fully complied with officers' orders after initially asking them to explain why they were confronting him.

115.    On sections of the body camera footage, an officer of Defendant Miamisburg is observed physically writing portions of Defendant Merkel's witness statement on her behalf, and in some instances writing or adding content to the statement.

16

116.     This act of witness statement fabrication and evidence manipulation was even acknowledged as being improper by the Miamisburg Police Department themselves in communications with the Dayton Branch NAACP.

117.     No identification check was performed to confirm whether Plaintiff lived in the immediate area.

118.     No Miranda rights were read to Plaintiff by Defendant Miamisburg's police officers.

119.     No reasonable investigation into the dispatched complaint of criminal damaging was ever conducted.

120.     Instead, Defendant Miamisburg's officers bypassed every procedural protection and investigative obligation and moved directly to arresting a Black man who was walking in his own neighborhood.

121.     Officers on body camera are also heard laughing and joking about Plaintiff's physical stature and demeanor following his arrest, a callous response to the violent, unlawful detention they had just carried out.

## F. **Defendant Merkel's Conduct After the Arrest**

122.     While Plaintiff was being handcuffed and arrested in front of his own home, Defendant Merkel filmed the encounter on her Snapchat profile and published it to her followers, making joking and celebratory comments about Plaintiff's arrest.

123.     Multiple neighbors observed Defendant Merkel's Snapchat posts at the time of the incident.

124. Following the arrest, Defendant Merkel encountered Plaintiff's wife. She laughed at her and said something to the effect of, "that was your husband? Hahaha."

125. Defendant Merkel's conduct, including her false report to police and her public mockery of the resulting arrest, was motivated by racial animus and/or a reckless indifference to the rights of Plaintiff as a Black man in an overwhelming white community with a documented history of discrimination.

126. Defendant Merkel found amusement in making false reports of criminal activity against Plaintiff by succeeding in weaponizing the police against Plaintiff in an area where police had a history of using lethal force against Black men.

## G. Dismissal of All Charges and Judicial Findings

127. Plaintiff filed a complaint with the Dayton Branch NAACP on July 17, 2025, immediately following the incident.

128. The charges against Plaintiff, disorderly conduct and obstruction, proceeded to a bench trial in Miamisburg Municipal Court.

129. The City of Miamisburg presented no witnesses and The Honorable judge presiding over the matter dismissed all charges against Plaintiff with prejudice on January 23, 2026.

130. Dismissal with prejudice means that these charges cannot be refiled against Plaintiff.

131. Furthermore, the Court's dismissal reflects a finding that there was no lawful or evidentiary basis for the prosecution.

## H. Plaintiff's Damages

18

132.     As a direct and proximate result of the conduct of Defendants described herein, Plaintiff Kinney has suffered severe and ongoing damages.

133.     The forcible handcuffing of Plaintiff behind his back, in direct disregard of his recent spinal surgery and his expressed medical limitations, aggravated his back and shoulder injuries.

134.     Plaintiff, who had hardware implanted in his back and neck, was forced into a handcuffed position his body could not accommodate and was then crammed into the back of a small police cruiser.

135.     As a result, Plaintiff suffered nerve irritation that required additional medical procedures, including a lumbar decompression and a wrist and nerve ablation procedure to address the damage caused during the arrest.

136.     Prior to this incident, Plaintiff's tow truck business had valuable roadside assistance contracts, including with AAA and other national companies. However, following the arrest, Plaintiff was required to undergo an annual background check with the arrest in his own neighborhood now appearing on that background check.

137.     As a result, Plaintiff lost all of his roadside assistance contracts, lost his tow trucks, and his business was destroyed.

138.     Additionally, the false arrest and the damage it caused to Plaintiff's business caused him to default on bank loans with his account being closed as a result of his financial collapse following the loss of his business.

139.     Plaintiff's credit score, which had previously always been high, was decimated by these events.

140.     Plaintiff now faces the potential loss of the home he has owned for nearly two decades because of the series of events which Defendants' unlawful arrest and discrimination led to.

141.     Plaintiff's work as a personal bodyguard was also negatively impacted due to his clients, including prominent entertainers who rely on his reputation and background, choosing to distance themselves from working with Plaintiff after he had been arrested.

142.     Thus, Defendants' wrongful arrest of Plaintiff damaged his professional standing in both the fields of work which Plaintiff had previously made his living in.

143.     Plaintiff has suffered profound public humiliation and reputational harm, including having his arrest broadcast on Snapchat by Defendant Merkel while his wife, his ill son, and neighbors watched.

144.     Plaintiff has suffered and continues to suffer severe emotional distress, anxiety, and trauma as a result of these events, including the trauma of having been terrorized by police at gunpoint (as he believed) steps from his own home, in front of his terminally ill son who was waiting in the driveway to spend time with his father.

145.     Plaintiff never got to return to his son that night to watch the stars; instead, he was dragged to jail while his ill son observed the entire disturbing scene from down the block.

**CAUSES OF ACTION**

20

## COUNT I – VIOLATION OF 42 U.S.C. § 1983

### Fourth and Fourteenth Amendment — Unlawful Seizure, Arrest, and Excessive Force

### (Against Defendant City of Miamisburg)

146.    Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 145 as if fully restated herein.

147.    At all times relevant herein, officers of the Miamisburg Police Department were acting under color of state law within the meaning of 42 U.S.C. § 1983.

148.    Mr. Kinney had a clearly established constitutional right under the Fourth Amendment to be free from unreasonable seizure and arrest without probable cause.

149.    Defendant Miamisburg's officers seized, detained, arrested, and jailed Plaintiff without probable cause, without reasonable suspicion of any crime, and without any lawful basis whatsoever.

150.    The only basis for Defendants' officers' encounter with Plaintiff was a false report by Defendant Merkel, which officers never investigated, regarding a Black man walking on a public sidewalk.

151.    Plaintiff also had a clearly established constitutional right under the Fourth Amendment to be free from excessive and unreasonable force.

152.    Defendants' officers used constitutionally excessive force against Plaintiff by drawing multiple tasers and pointing them at an unarmed man walking on a sidewalk, by handcuffing him in a manner inconsistent with his known medical condition, and by forcing him into a police cruiser in a manner that caused him significant physical injury.

21

153.    The conduct of Defendant City's officers, as described herein, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

154.    Defendant Miamisburg, through its policies, customs, and/or deliberate indifference to the constitutional rights of its citizens, is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the constitutional violations of its officers. The pattern of conduct reflected in this incident, including the fabrication of evidence, the writing of witness statements, the destruction of evidence, the failure to investigate the underlying complaint, and the previous history of Plaintiff being subjected to racially charged statements from one of the officers who ended up arresting him on July 12, 2025, reflects a custom or policy of the Miamisburg Police Department, or in the alternative, a deliberate indifference to the training and supervision of its officers that was the moving force behind the violation of Plaintiff's constitutional rights.

155.    Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT II – VIOLATION OF 42 U.S.C. § 1983

### Fourteenth Amendment — Equal Protection / Racial Discrimination

### (Against Defendant City of Miamisburg)

156.    Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 155 as if fully restated herein.

22

157.     The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from treating individuals differently on the basis of their race.

158.     The conduct of Defendant City's officers, as described herein, was motivated in whole or in substantial part by Plaintiff's race as a Black, African American man.

159.     Defendant City's officers encountered a Black man walking in a predominantly white neighborhood and immediately escalated to threats of lethal force, refusing to engage in any verbal communication, investigation, or de-escalation.

160.     Defendant City's officers that responded to the scene bypassed standard procedures by failing to conduct an identification check of Plaintiff, by failing to investigate the underlying complaint, and by failing to read Plaintiff his Miranda rights.

161.     Defendant City's officers also fabricated pretextual charges to justify arresting a Black man who had committed no offense.

162.     This treatment is consistent with a pattern in the Neighborhood in which Black residents and visitors are subjected to disproportionate and discriminatory police contact, while similarly situated white individuals are not.

163.     Defendant City, through its customs, policies, and deliberate indifference, is liable under 42 U.S.C. § 1983 for equal protection violations committed by its officers against Plaintiff.

164.     Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

23

## COUNT III – WRONGFUL ARREST / FALSE ARREST

### (Against Defendant City of Miamisburg)

165.      Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 164 as if fully restated herein.

166.      Defendant Miamisburg, through its police officers, arrested Plaintiff on or about July 12, 2025, and charged him with disorderly conduct and obstruction.

167.      The arrest was made without probable cause as Plaintiff was simply walking on a public sidewalk in his own neighborhood.

168.      No damage to any mailbox was documented or investigated.

169.      Plaintiff was not intoxicated and was never administered a sobriety test of any kind.

170.      Plaintiff's water bottle was logged by the jail as containing only water.

171.      Plaintiff's only alleged non-compliance was calmly asking officers why they were confronting him, which is a constitutionally protected act.

172.      The charges against Plaintiff were dismissed with prejudice by the Miamisburg Municipal Court. These facts further establish the lack of probable cause.

173.      As a direct and proximate result of Defendant City's wrongful arrest of Plaintiff, Plaintiff suffered physical injury, loss of his business, destruction of his livelihood, economic devastation, emotional distress, reputational harm, and all other damages set forth herein.

24

174. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT IV – FALSE IMPRISONMENT
### (Against Defendant City of Miamisburg)

175. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 174 as if fully restated herein.

176. Defendant Miamisburg, through its officers, intentionally confined Plaintiff by ordering him to the ground, handcuffing him, placing him in a police cruiser, and detaining and processing him at the jail.

177. The confinement was without lawful authority as it was based on fabricated charges supported by no evidence and motivated by racial animus.

178. Plaintiff was aware of the confinement and did not consent to it. He complied only under duress and in fear for his life.

179. As a direct and proximate result of Defendant City's false imprisonment of Plaintiff, Plaintiff suffered all damages set forth herein.

180. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT V – MALICIOUS PROSECUTION
### (Against Defendants City of Miamisburg and Katherine Merkel)

181.    Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 180 as if fully restated herein.

182.    Defendants initiated and continued a criminal prosecution against Plaintiff.

183.    Defendant Merkel provided a false police report that initiated the criminal proceedings.

184.    Defendant City's officers fabricated and amplified pretextual charges, wrote Defendant Merkel's witness statement themselves, destroyed exculpatory evidence, and prosecuted Plaintiff through trial.

185.    The prosecution by Defendant Miamisburg was initiated and continued without probable cause.

186.    All charges were dismissed with prejudice following a bench trial at which the City presented no witnesses.

187.    Defendants acted with malice. The fabrication of evidence, the destruction of the water bottle's contents, the writing of the complaining witness's statement by an officer, and the racially charged conduct throughout the encounter demonstrate actual malice or reckless indifference to Plaintiff's rights.

188.    The prosecution terminated entirely in Plaintiff's favor with the dismissal with prejudice of all charges.

189.    As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered all damages set forth herein.

26

190.    Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT VI – COMMON LAW ASSAULT AND EXCESSIVE FORCE
### (Against Defendant City of Miamisburg)

191.    Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 190 as if fully restated herein.

192.    Defendant City of Miamisburg, through its officers, intentionally applied unreasonable and excessive force against Plaintiff by pointing multiple tasers at him, commanding him to the ground, and handcuffing him behind his back despite his known recent surgical history, age, and stated medical limitations.

193.    Plaintiff reasonably believed that the tasers pointed at him were firearms and he feared imminent death.

194.    Plaintiff was aware of the history of police in the area shooting a Black man and feared that this would happen to him in front of his terminally ill son.

195.    Plaintiff did not consent to the application of any force and there was no probable cause for arrest, making all force used against him constitutionally and legally unreasonable.

196.    Officers on body camera admitted that they bypassed all verbal engagement and went directly to pointing tasers solely based on Plaintiff's appearance and size, not because he posed any threat.

27

197.     Officers also falsely claimed on body camera that Plaintiff charged at them, a claim directly refuted by the footage itself.

198.     The handcuffing of Plaintiff behind his back, in direct disregard of his recent spinal surgery, caused aggravation to his existing injuries, nerve damage, and necessitated additional surgical procedures including a lumbar decompression and nerve ablation.

199.     As a direct and proximate result of Defendant City's assault and excessive force against Plaintiff, Plaintiff suffered physical injury, additional surgery, pain, medical expenses, emotional trauma, and all other damages set forth herein.

200.     Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

<u>**COUNT VII – MUNICIPAL LIABILITY**</u>

<u>**Monell Claim — Policy, Custom, and Deliberate Indifference**</u>

<u>**(Against Defendant City of Miamisburg)**</u>

201.     Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 200 as if fully restated herein.

202.     Defendant City of Miamisburg is liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the constitutional violations of its officers, which were the result of one or more of the following: (a) an official policy or custom of the Miamisburg Police Department that permitted, encouraged, or condoned racially discriminatory policing; (b) a widespread practice of unconstitutional conduct so persistent and well-settled as to constitute a custom with the force of law; or (c) deliberate

indifference by Defendant City in the hiring, training, supervision, and discipline of its officers, which was the moving force behind the violations of Plaintiff's rights.

203.     The conduct reflected in this incident, including the failure to investigate the dispatched complaint, the immediate escalation to weapons against an unarmed Black man, the fabrication of a complaining witness's statement on body camera, the deliberate destruction of exculpatory evidence, the fabrication of charges, the previous racially charged remarks from involved officers, and the complete disregard for standard procedures, reflects a pattern of unconstitutional and discriminatory conduct by the Miamisburg Police Department.

204.     Defendant City's acknowledgment, in communications with the NAACP, that the officer writing the witness statement was improper, without evidence of any internal affairs investigation, discipline, or corrective action, demonstrates deliberate indifference to its officers' constitutional violations.

205.     Moreover, the prior racially charged statements made by a Miamisburg Police Department officer to Plaintiff during a previous encounter, questioning how he could afford to live in his neighborhood and asking if he sold drugs, suggests a pattern of racially motivated conduct toward Plaintiff specifically by Defendant City's officers that was never investigated or corrected.

206.     As a direct and proximate result of Defendant City's policies, customs, and deliberate indifference, Plaintiff suffered all damages described herein.

29

207.    Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT VIII – NEGLIGENT HIRING, TRAINING, AND SUPERVISION
### (Against Defendant City of Miamisburg)

208.    Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 207 as if fully restated herein.

209.    Defendant Miamisburg owes a duty of reasonable care to hire, train, and supervise its police officers with respect to all applicable laws and constitutional requirements, including but not limited to the prohibition on racially discriminatory policing, the requirements of probable cause, appropriate use of force, evidence preservation, and proper witness statement procedures.

210.    Defendant City breached this duty by failing to properly hire, train, and supervise its officers with respect to these obligations.

211.    The conduct captured on body camera in this case, including evidence destruction, witness statement fabrication, pretextual charging, racial commentary, and the deliberate decision to skip verbal engagement and proceed directly to weapons, reflects a failure of training and supervision that goes to the core of Defendant City's law enforcement practice.

212.    Defendant City further breached its duty by failing to investigate, discipline, or remedy the prior racially charged conduct of its officers toward Plaintiff during an earlier encounter, thereby permitting and enabling a pattern of discriminatory conduct to continue unchecked.

30

213.     As a direct and proximate result of Defendant City's negligent hiring, training, and supervision, Plaintiff was harmed and is entitled to relief.

214.     Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT IX – DEFAMATION

### (Against Defendant Katherine Merkel)

215.     Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 214 as if fully restated herein.

216.     Defendant Merkel made false statements of fact about Plaintiff when she told the Miamisburg Police Department that Plaintiff was hitting on mailboxes and engaging in criminal damaging. This statement was entirely false.

217.     Defendant Merkel published this false statement to multiple Miamisburg Police Department officers, causing Plaintiff to be arrested and criminally charged.

218.     Additionally, Defendant Merkel published false and defamatory content about Plaintiff on her Snapchat social media profile while filming his arrest, broadcasting it to her followers, neighbors, and members of the community.

219.     Multiple neighbors observed Defendant Merkel's defamatory posts.

220.     Defendant Merkel subsequently made defamatory and mocking statements directly to Plaintiff's wife regarding his arrest.

221.      The false statements made by Defendant Merkel, that Plaintiff was engaging in criminal activity, are defamatory per se, as they falsely imputed criminal conduct to Plaintiff, damaged him in his profession, and exposed him to public hatred, contempt, and ridicule.

222.      Defendant Merkel acted at minimum with negligence in making these statements without any reasonable basis.

223.      Upon information and belief, Defendant Merkel acted with actual malice, knowing the statements were false or with reckless disregard for their truth, motivated by racial animus toward Plaintiff.

224.      As a direct and proximate result of Defendant Merkel's defamatory statements, Plaintiff suffered reputational harm, loss of business and professional contracts, emotional distress, humiliation, and all other damages set forth herein.

225.      Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT X – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

226.      Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 225 as if fully restated herein.

227.      The conduct of Defendants, as described herein, was extreme and outrageous.

228.    Defendant City's officers surrounded an unarmed Black man walking on a public sidewalk in his own neighborhood, screamed obscenities at him, pointed weapons at him that he believed would kill him, handcuffed him in a manner they knew would cause him physical harm, laughed and joked about his appearance, fabricated evidence, destroyed evidence, and jailed him without cause.

229.    All of this took place in front of Plaintiff's terminally ill son.

230.    Defendant Merkel filmed and broadcast Plaintiff's arrest for social entertainment and laughed about it to his wife.

231.    Defendants either intended to cause Plaintiff severe emotional distress, or knew with substantial certainty that their conduct would do so.

232.    Defendants' conduct was the proximate cause of the severe emotional distress, trauma, anxiety, humiliation, and anguish experienced by Plaintiff and his family.

233.    Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT XI – VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12132, *et seq.*
### (Disability Discrimination by a Public Entity)
### (Against Defendant City of Miamisburg)

234.    Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 233 as if fully restated herein.

33

235.     Title II of the Americans with Disabilities Act prohibits public entities, including municipalities and their law enforcement agencies, from discriminating against qualified individuals with disabilities or excluding such individuals from participation in, or denying them the benefits of, the services, programs, or activities of those public entities. 42 U.S.C. § 12132.

236.     At the time of the events described herein, Mr. Kinney was a qualified individual with a disability within the meaning of the ADA.

237.     Plaintiff had undergone spinal surgery approximately one and a half weeks before the incident and had hardware and wires implanted in his back and neck. Plaintiff also suffered from pre-existing shoulder conditions.

238.     These conditions constituted physical impairments that substantially limited major life activities, including his ability to place his arms fully behind his back.

239.     Defendant Miamisburg is a public entity subject to Title II of the ADA. Defendant Miamisburg's police department and its officers' activities in making arrests, detaining individuals, and responding to calls constitute services, programs, and activities within the meaning of Title II.

240.     Plaintiff informed Defendant Miamisburg's responding officers of his disability and his recent spinal surgery at multiple points during the encounter.

241.     Plaintiff specifically told officers that he had recently undergone back surgery and that he was physically unable to place his hands fully behind his back in the manner officers were demanding.

34

242. Despite having direct, actual knowledge of Plaintiff's disability and the physical limitations it imposed, Defendant Miamisburg's officers failed to provide any reasonable modification or accommodation to their arrest procedures.

243. Defendant Miamisburg's officers instead forcibly handcuffed Plaintiff behind his back, knowing that doing so would cause him physical harm, and then placed Plaintiff into a small police cruiser while restrained in a position his body could not accommodate without pain or injury.

244. A reasonable modification to the manner in which Plaintiff was handcuffed, such as handcuffing him in front of his body or utilizing an alternative restraint technique consistent with his documented spinal limitations, would not have fundamentally altered the nature of the arrest or posed an undue burden on Defendant City.

245. Defendant City's failure to make any such modification, and its officers' deliberate disregard of Plaintiff's stated medical limitations, constitutes discrimination against Plaintiff on the basis of his disability in the provision of law enforcement services, in violation of 42 U.S.C. § 12132.

246. As a direct and proximate result of Defendant City's failure to accommodate Plaintiff's disability during his arrest, Plaintiff sustained aggravation of his existing spinal injuries, nerve damage, and was required to undergo additional medical procedures, including a lumbar decompression and a wrist and nerve ablation procedure, causing him significant physical harm, pain, suffering, and medical expenses.

247. There is no legitimate justification for Defendant City's failure to provide a reasonable modification to its arrest procedures in light of Plaintiff's known and communicated disability.

35

248.     Wherefore, Plaintiff requests compensatory damages in excess of $25,000.00, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendants' unlawful, discriminatory, and tortious conduct, policies, and practices, as described herein, Plaintiff respectfully requests that this Court grant judgment in his favor, and against Defendants, as follows:

A. Declaring that Defendants' actions violated 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 12132, and Ohio tort law;

B. Permanently enjoining Defendant Miamisburg from engaging in the racially discriminatory policing practices described herein and directing Defendant Miamisburg to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

C. Awarding compensatory and punitive damages in an amount in excess of $25,000.00, together with costs and reasonable attorney fees pursuant to applicable federal and state laws and regulations;

D. Mandating that Defendant City of Miamisburg and all of its officers, agents, and employees receive mandatory training on civil rights laws, constitutional policing, de-escalation, evidence preservation, and proper witness statement procedures;

36

**E.** Mandating that Defendant City of Miamisburg conduct a full internal affairs investigation into the officers involved in this incident and into any related prior incidents of racially discriminatory policing;

**F.** Mandating that Defendant City adopt and enforce a non-discrimination policy applicable to all police officers and staff, including specific prohibitions against racially motivated police stops, excessive force, and evidence fabrication; and

**G.** Granting such additional legal and equitable relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.

Respectfully submitted,

*/s/ Damek P. Mitchell*

_____

Damek P. Mitchell, Esq. (#105204)
C. Jacob Davis, Esq. (#0101745)
Nalls Davis
33 White Allen Ave.
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 660-4400
damek.mitchell@nallslaw.com
Jacob.Davis@nallslaw.com
*Attorneys for Plaintiff, Darryl Kinney Sr*.

## CERTIFICATE OF SERVICE

I hereby certify that service of the Summons and Complaint is being made upon Defendants on this 23rd day of June, 2026, in accordance with the Federal Rules of Civil Procedure, via certified mail return receipt requested, or another form of proper service at the address listed in the caption of this Complaint.

Respectfully submitted,

*/s/ Damek P. Mitchell*

_____

Damek P. Mitchell, Esq. (#105204)
*Attorney for Plaintiff*